**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

EVA WIGGINS,
    Plaintiff,

    v.

ING U.S., INC. et al.,
    Defendants.

CIVIL ACTION NO.
3:14-CV-1089 (JCH)

JUNE 17, 2015

**RULING RE: DEFENDANTS' MOTION TO STAY (DOC. NO. 13)**
**AND DEFENDANTS' MOTION TO DISMISS (DOC. NO. 14)**

**I.    INTRODUCTION**

Plaintiff Eva Wiggins brings this action against defendants ING U.S., Inc., and

ING Life Insurance and Annuity Company (collectively, "ING"), Wiggins' former

employers, alleging that ING took adverse employment actions against her because she

acted as a whistleblower.  In the Complaint (Doc. No. 1), she raises claims invoking the

Sarbanes-Oxley Act of 2002 ("SOX"), see 18 U.S.C. § 1514A(b)(1)(B) (Count I); the

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"),

see 15 U.S.C. § 78u-6(h)(1)(B)(i) (Count II); and section 31-51q of the Connecticut

General Statutes (Count III).  In their Motion to Stay ("MTS") (Doc. No. 13) and Motion

to Dismiss ("MTD") (Doc. No. 14), the defendants ask that this court stay this action on

the basis of pending arbitration proceedings as to all of Wiggins' claims or, in the

alternative, that the court dismiss the entirety of the Complaint for failure to state a claim

upon which relief can be granted.

1

## II.    FACTS AND STATUTORY SCHEME[1]

When Eva Wiggins began working for ING in February 2006, she completed and signed a Form U-4, a condition of her employment.  Declaration of Michael Trotter (Doc. No. 13-2) ¶ 3.  The Form U-4 contained a term that provided:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my <u>firm</u>, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the <u>SROs</u> [self-regulatory organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent <u>jurisdiction</u>.

Rev. Form U4 (10/2005) ("U-4" or "Form U-4") (Doc. No. 13-2/22-1 (redacted) at 4–17) (emphases in original).

Already enacted into law at this time was the Sarbanes-Oxley Act of 2002.  <u>See</u> Pub. L. No. 107-204, 116 Stat. 745 (2002).  SOX established a private right of action to vindicate the rights of employees of certain companies who are discharged for, <u>inter alia</u>, "provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of [certain securities laws] to . . . a person with supervisory authority over the employee . . . ."  18 U.S.C. § 1514A(a)(1)(C).

In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010), was enacted into law.  Dodd-Frank established a private right of action against an employer who, <u>inter alia</u>,  "discharge[s] . . . a whistleblower . . . because of any lawful act done by the whistleblower . . . in

---

[1] Different legal standards apply to the Motion to Stay and the Motion to Dismiss addressed in the present Ruling.  In order to streamline the presentation of facts for present purposes, this Part of the Ruling presents facts relevant to the Motion to Dismiss drawing reasonable inferences in favor of the plaintiff and presents the facts material to the Motion to Stay, all of which are undisputed, in the light most favorable to the Wiggins, who is the non-moving party.  <u>See</u> <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003) (review of facts using summary judgment standard is appropriate when evaluating a motion to stay pending arbitration).

making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." 15 U.S.C. § 78u-6(h)(1)(A)(iii).  For purposes of the foregoing section provision, a "whistleblower" is defined as: "any individual who provides . . . information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission."

Dodd-Frank also amended section 1514A of title 18, the section containing the SOX right of action, to provide: "No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."  18 U.S.C. § 1514A(e)(2).

In 2011, Wiggins received and responded to an email containing attachments referred to as "the IFA [ING Financial Advisers] Written Supervisory Procedures and Compliance Manual," a "complaince bulletin," and a "corresponding attachment." Declaration of Monica White (Doc. No. 13-3) ¶ 4.  The first of these documents contained the following sentence: "When an individual becomes registered with IFA, he or she agrees to resolve any dispute, claim or controversy with IFA or a customer with binding arbitration."  Id. ¶ 6.  The email instructed:

> Please read [the attached documents].  To make this process as easy as possible, please reply to this e-mail by selecting the "Yes, I Confirm" voting button in the upper left hand corner of this e-mail. A box will pop up which will ask you if you want to send the response or edit your response before sending. Choose the first button, "Send the response now", and you are done!
>
> By replying to this e-mail, you:
>
> * Acknowledge receipt of Compliance Bulletin #01/11 and the corresponding attachment;
> * Confirm that you have read the ING Financial Advisors [sic], LLC Written Supervisory Procedures and Compliance Manual in its entirety; and
> * Acknowledge that the Manual and all additions and replacements to policy are confidential and the property of IFA and must not be disclosed to persons not

3

affiliated with ING (except for securities regulators and other law enforcement officials on official business).

Id. ¶ 4.  Wiggins sent a reply email confirming that she had received and read the ING Financial Advisers, LLC Written Supervisory Procedures and Compliance Manual in its entirety in its entirety.  Id. ¶ 7.

Beginning in or about May 2008, Wiggins "noticed widespread problems with the internal policies and procedures put in place by Defendants, and the implementation and application of these internal policies and procedures."  Complaint ¶ 11.  These problems included, but are not limited to (see also, e.g., id. ¶¶ 26, 27): "the violation of SOX audit requirements," id.; "that market value assessments . . . were consistently incorrect" and that, even after Wiggins "borught the issue . . . to the attention of her supervisors and managers . . . the inaccuracies persisted because . . . management failed to take corrective action regarding these problems," id. ¶¶ 12, 13; "that deferred sales charges were frequently being incorrectly imposed" to the benefit of ING and the loss of customers, id. ¶ 14; "that plans which had accounting issues or errors were frequently removed from [a] database used by auditors [in the course of their quarterly SOX audits] to identify [which] plans [would] be audited," id. ¶ 16; that, where Wiggins "refused to sign off on work [in the course of her review duties] that she had not yet had time to review, or that was inaccurate or incomplete," "frequently . . . management [would direct another individual to approve the work], even though it was incomplete or contained errors," id. ¶ 17; that "the files and assets were sent out to new carriers prior to the receipt of authorization by the client," or "the wrong plan[s] were sent to [ ] new carrier[s]," resulting in potential or actual harm to clients, id. ¶¶ 20, 22.

Wiggins reported these events to her supervisors. Id. ¶¶ 12–24. After her reporting activities, Wiggins was subjected to a series of actions that she characterizes as retaliatory. Id. ¶¶ 25–38. In February 2013, Wiggins' employment was terminated. Id. ¶ 39.

In July 2014, Wiggins filed the present lawsuit. The Complaint alleges three claims. Count I claims that her termination constituted illegal retaliation for her opposition to the aforementioned "widespread problems" in violation of section 1514A(a)(1)(C) of title 18 of the United States Code, giving rise to a cause of action as provided in section 1514A(b)(1)(B) of the same title. Count II claims that the same actions violated section 78u-6(h)(1)(A)(iii) of title 15 of the United States Code (based on this provision's incorporation of the very same prohibitions of certain behavior given in the statutes that form the basis for Count I), giving rise to a cause of action as provided in section 78u-6(h)(1)(B)(i) of the same title. Finally, Count III claims that the same actions also violated Wiggins' rights under the free speech provisions of the Connecticut Constitution, as guaranteed by section 31-51q of the Connecticut General Statutes.

## III.   DISCUSSION

The basic thrust of the Complaint is that, in the course of Wiggins' work at ING, she noticed certain events or activities that gave her concern; she reported her concerns to certain individuals at ING; and, because she reported these issues, she was terminated. Wiggins argues that her termination constituted illegal retaliation for protected activity under SOX (Count I), Dodd-Frank (Count II), and section 31-51q of the Connecticut General Statutes (Count III).

ING argues that Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of all of these three claims, see Motion to Dismiss (Doc. No. 14), but also that Wiggins was and is required to pursue each of her claims through arbitration rather than in court, so that the case should be stayed, see Motion to Stay (Doc. No. 13).

The court must first decide whether Wiggins' claims must be pursued through arbitration; only for those claims that may be heard in court may the court rule on ING's Motion to Dismiss. See AT&T Techs., Inc., v. Comm'ns Workers of Am., 475 U.S. 643, 649 (1986). Accordingly, the court first decides which claims must be arbitrated and concludes that only one of them must be. See Part III.A infra. The court proceeds to rule on ING's Motion to Dismiss as to the remaining two claims and determines that dismissal of these claims with leave to replead is appropriate. See Part III.B infra. Because, on the pleadings before the court, none of Wiggins' claims warrants further adjudication by this court, the court dismisses the case in its entirety rather than staying the case, as it would consider doing were at least one claim to survive dismissal. See Part III.C infra.

A.    Whether the claims are subject to mandatory arbitration

ING argues that Wiggins must pursue all of her three claims through arbitration rather than in court.

In determining whether to stay the case pursuant to the Federal Arbitration Act, Pub. L. No. 68-401, 43 Stat. 883 (1925), three issues may be relevant: (1) whether a valid agreement to arbitrate disputes exists; (2) to the extent that a valid agreement exists, whether the asserted claims are covered by the agreement and their coverage is not rendered void by law; and (3) if the court concludes that some, but not all, of the

6

claims in the case are arbitrable, whether staying the remaining claims pending

arbitration is appropriate.  See JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169

(2d Cir. 2004).

      The court will treat each of these issues in turn.  In so doing, the court reviews

the submissions before it using a standard equivalent to the one applicable on a motion

for summary judgment.  See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

"[O]rdinary state-law principles that govern the formation of contracts" are relevant to

the first two questions.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944

(1995); Kurz v. Chase Manhattan Bank USA, N.A., 319 F. Supp. 2d 457, 461 (S.D.N.Y.

2004) ("Whether the parties agreed to arbitrate is determined by state contract law.").[2]

      1.    Prima facie enforceability of arbitration clauses

      As to the first issue—whether a valid agreement to arbitrate disputes exists—ING

argues that arbitration clauses in two different documents, the Form U-4 and the ING

---

[2] The Federal Arbitration Act (FAA) provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 321, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted).  "[T]he FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks and citations omitted).

      At the same time, arbitration "is a matter of consent, not coercion."  Id. at 143 (quoting Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).  Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 392 (2d Cir. 2011); Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003).  "Persons are generally entitled to have their dispute settled by the ruling of a court of law.  It is essentially only by making a commitment to arbitrate that one gives up the right of access to a court of law in favor of arbitration.  Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 358 (2d Cir. 2008) (citation omitted).  "While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so."  Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (emphasis in original) (internal quotation marks and citation omitted).  "[C]ourts must place arbitration on an equal footing with other contracts, and enforce them according to their terms."  Concepcion, 131 S. Ct. at 1745.

Financial Advisers Written Supervisory Procedures and Compliance Manual ("IFAWSPACM"), each constitute enforceable agreements to submit claims to arbitration.  Wiggins disputes ING's contentions as to both agreements.

The court concludes that, for purposes of summary judgment, ING has only established the U-4 is enforceable.

As a condition of her employment with ING, Wiggins executed the Form U-4 in February 2006.  The following term is included in the U-4:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my <u>firm</u>, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the <u>SROs</u> [self-regulatory organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent <u>jurisdiction</u>.

Form U-4, Part 15A.5.  As the Second Circuit has held, reviewing a clause substantially identical for present purposes in what appears to be a prior version of the Form U-4 at issue in this case, this document "is a contract" and the arbitration clause quoted above is "binding."  <u>See</u> <u>Thomas James Assocs., Inc. v. Jameson</u>, 102 F.3d 60, 62, 65 (2d Cir. 1996).  This clause plainly imposes a general requirement on the parties to arbitrate disputes such as the present one.[3]

However, ING has not established that the IFAWSPACM is enforceable.  The arbitration clause in the IFAWSPACM states, "When an individual becomes registered with [ING Financial Advisers, LLC], he or she agrees to resolve any dispute, claim or

---

[3] In their papers, the parties contest whether any distinction in identity between the defendants named in this action and those parties named in the Form U-4 matter.  <u>See, e.g.</u>, MTS Opp. at 16. However, there appears to be no dispute that any distinction between the two named defendants and the third entity, ING Financial Advisers, LLC,is illusory.  Wiggins means to bring this suit against her former employer because her employer terminated her, and Wiggins' execution of the Form U-4 occurred as a condition of her employment by the same party.

controversy with IFA or a customer with binding arbitration."  This statement does not appear to be an agreement so much as an acknowledgment of a prior agreement—perhaps a reference to Form U-4.  This case is thus unlike those in which a handbook explicitly states that its arbitration clause was binding.  See, e.g., Topf v. Warnaco, Inc., 942 F. Supp. 762, 764–65 (D. Conn. 1996).

ING submits no other evidence sufficient to establish beyond triable dispute that IFAWSPACM contained any binding arbitration agreement.  Its only representation in this respect is that Wiggins responded when she received the IFAWSPACM by email with a "[c]onfirm[ation] that [she] had read" the IFAWSPACM and an "[a]cknowledg[ment] that the [IFAWSPACM] and all additions and replacements to policy are confidential . . . ."  Declaration of Monica White (Doc. No. 13-3) ¶¶ 4–7.  ING has not submitted the entire IFAWSPACM to the court, making it especially difficult to determine whether, in light of any other of its terms, or the agreement taken as a whole, it might be construed to constitute a binding agreement.  From what is presently before it, the court cannot say that the IFAWSPACM (let alone the arbitration clause specifically) constitutes a binding agreement relevant to the present dispute.

        2.     Whether each of Wiggins' claims must be submitted to arbitration

Because the U-4's arbitration clause is binding, the court proceeds to the second issue—whether the clause covers each of Wiggins' claims or whether the law requires that the parties not be compelled to arbitrate the claims.  See JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

i.      Submission of the SOX claim (Count I) to arbitration is not
required

ING argues that Wiggins is required to submit her SOX claim to arbitration

because it is covered by the U-4's arbitration clause and section 1514A(e)(2) does not

apply retroactively to free Wiggins from her agreement to arbitrate this claim.  <u>See</u>

Memorandum in Support of Motion for Stay Pending Arbitration ("MTS Mem.") (Doc. No.

13-1) at 12.[4]  The court disagrees, concluding that, without regard to what the arbitration

clause provides, federal law provides that Wiggins may not be compelled[5] to arbitrate

this claim.[6]

Congress amended SOX in 2010 to prohibit pre-dispute arbitration agreements

as to claims such as the SOX claim that Wiggins presently brings.  <u>See</u> 18 U.S.C.

§ 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the

agreement requires arbitration of a dispute arising under this section.").  Although the

court recognizes that there is a split of authority on this issue, for the reasons

thoughtfully elaborated by Judge Koeltl in the <u>Wong</u> case, the court concludes that

section 1514A(e)(2) establishes that the U-4 is neither "valid [n]or enforceable" insofar

---

[4] The court cites to the page numbers assigned by CM/ECF after a document is filed, not the
page numbers put on each page by counsel, to the extent that the two differ.

[5] When it speaks in this Ruling of whether arbitration will be "compelled," the court does not mean
to suggest that Wiggins may be affirmatively required to pursue her claims, only that she may be required
to pursue them in a particular forum if she does opt to pursue them.

[6] The U-4 arbitration clause, executed by Wiggins in February 2006, states that Wiggins agrees:

to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is
required to be arbitrated under the rules, constitutions, or by-laws of the SROs [self-regulatory
organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to
time and that any arbitration award rendered against me may be entered as a judgment in any
court of competent jurisdiction.

Form U-4 at Part 15A.5.

as it is an "agreement requir[ing] arbitration of a dispute arising under" the SOX

provision that Wiggins invokes.  See Wong v. CKX, Inc., 890 F. Supp. 2d 411, 420–23

(S.D.N.Y. 2012) (citing cases reaching contrary conclusions at 424 n.2).[7]

> ii.   Submission of the Dodd-Frank claim (Count II) to arbitration
>        is not required

ING argues that, because section 78u-6 has no anti-arbitration provision

analogous to section 1514A(e)(2), the Dodd-Frank claim must be resolved through

arbitration even if 1514A(e)(2) bars the compulsion of arbitration of Wiggins' SOX claim.

See MTS Mem. at 14; Reply Brief in Support of Motion for Stay Pending Arbitration

("MTS Reply") (Doc. No. 31) at 5.  Wiggins argues that, because her Dodd-Frank claim

is predicated on unlawful activities by ING that are elaborated in section 1514A(a) and

incorporated into section 78u-6 only by cross-reference, see 15 U.S.C. § 78u-

6(h)(1)(A)(iii), the Dodd-Frank claim is, like the SOX claim, "a dispute arising under

[section 1514A]," and thus likewise excluded from coverage under an arbitration clause.

Precedent supports ING's argument.  See Khazin v. TD Ameritrade Holding

Corp., 773 F.3d 488, 492–95 (3d Cir. 2014); Murray v. UBS Securities, LLC, No. 12-cv-

5914, 2014 WL 285093, at *8–*9 (S.D.N.Y. Jan. 27, 2014); Ruhe v. Masimo Corp., No.

SACV 11-00734, 2011 WL 4442790, at *4 (C.D. Cal. Sept. 16, 2011).  In essence,

these cases reason that a cause of action "arises under" the statute that creates it and

that section 78u-6 creates the applicable claim (in this case, what the court refers to as

Wiggins' Dodd-Frank claim).  Accordingly, these cases conclude, this Dodd-Frank claim

---

[7] Even if the IFACM were enforceable and otherwise applicable, see discussion Part III.A.1 supra, and irrespective of the court's present retroactivity conclusion, it would likewise fail to require Wiggins to arbitrate her SOX or Dodd-Frank claims because it was only presented to Wiggins well after the enactment of Dodd-Frank's anti-arbitration amendment to section 1514A.

does not "aris[e] under" section 1514A and section 1514A(e)(2)'s anti-arbitration policy has no application to Wiggins' Dodd-Frank claim.

These cases actually oversimplify the applicable case law.  As the Supreme Court explained in Jones v. R.R. Donnelley & Sons Co., a cause of action not only "arises under" the provision literally explicitly stating that a private right of action exists ("an individual may bring an action in the appropriate United States District Court" and so forth), but also under any law that "provides a necessary element of the plaintiff's claim for relief."  541 U.S. 369, 376 (2004) (deciding whether cause of action "arose under" a statute "enacted after" a certain date where the statutory section existed prior to the date but was amended after the date).  "[N]othing in our case law supports an interpretation [of 'arising under'] . . . under which [the phrase] means something akin to 'based solely upon.'"  Id. at 383 (emphasis added).

The Donnelley Court also noted in that case that "[i]n order to ascertain Congress' intent [to have a broader or narrower meaning of 'arising under'] . . . we must look beyond the bare text of [the applicable provision] to the context in which it was enacted and the purposes it was designed to accomplish."  Id. at 377.  However, neither party presents, nor does the court discern, any clear congressional intent to broaden or narrow the plain meaning of "arising under" in section 1514A(e)(2).  See also Holmes Group, Inc. v. Vornado Air Circulation Syss., Inc., 535 U.S. 826, 830 (2002) (a claim "'arises under' patent law" if, inter alia, "'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law'"); Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co., 130 B.R. 405, 407 (Bankr. S.D.N.Y. 1991) ("Actions that

'arise under' title 11 involve claims 'predicated on a right created by a provision of title 11.'").

Accordingly, the court relies on the plain meaning of "arising under" and concludes that Wiggins' Dodd-Frank claim, although enabled by section 78u-6(h)(1)(B)(i) (the provision creating the cause of action) and section 78u-6(h)(1)(A)(iii) (the provision referring to the prohibited conduct), also "aris[es] under" section 1514A (the section that actually defines the prohibited conduct).  Thus, for the same reason that the court concludes that the SOX claim is outside the scope of the Form U-4 arbitration clause, the court similarly concludes that the Dodd-Frank claim is outside the scope of the Form U-4 arbitration clause and thus does not need to be submitted to arbitration.

> iii.    Submission of the section 31-51q claim (Count III) to arbitration is required

Wiggins argues that she is not required to submit her Count III claim (under section 31-51q of the Connecticut General Statutes) to arbitration because it is based on the same set of operative facts as her claim (in Count I) under section 1514A.  As with her argument regarding the Dodd-Frank claim (in Count II), she again rests on section 1514A(e)(2), which provides that "a dispute arising under [section 1514A]" is not subject to mandatory arbitration.  As with the other claims, if this were the case, then Rule 13201(b) would put it outside the reach of the Form U-4 arbitration clause.

However, this argument fails.  Indeed, it is simply a non sequitur.  To say that one claim rests on the same set of facts as another claim is irrelevant to whether the two claims arise under—i.e., are made possible by—the same provision of law.  These claims arise under entirely different provisions of law.

13

The only two decisions of which the court is aware that address the question whether to compel arbitration of otherwise-arbitrable claims arising from the same set of operative facts as a SOX claim, Stewart v. Doral Fin. Corp., 997 F. Supp. 2d 129, 139–40 (D.P.R. 2014), and Laubenstein v. Conair Corp., No. 5:14-cv-5227, 2014 WL 6609164, at *3 (W.D. Ark. Nov. 19, 2014), came to the opposite conclusion from the one this court reaches.  Those courts held that, when a non-SOX claim is "entangled with" and "arise[s] from the same nucleus of operative facts" as a SOX claim (to which section 1514A(e)(2) applies), compelling arbitration is inappropriate because doing so would "frustrate the purpose of 18 U.S.C. § 1514A(e)(2) [and] place a substantial financial and temporal burden on all parties involved."  Stewart, 997 F. Supp. 2d at 140.

Firstly, it is not at all clear how any purpose of section 1514A would be frustrated by compelling arbitration of Count III.  And the idea that compelling arbitration would "place a substantial financial and temporal burden on all parties involved" is similarly far from obvious; indeed, one of the main justifications given for seeking arbitration is that it reduces such burdens.

More to the point, however, is that it is simply inappropriate to decide whether to compel arbitration on these grounds that have no basis in the statutory text.  "The best evidence of [a statute's] purpose is the statutory text adopted by both Houses of Congress and submitted to the President."  W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991).  The court is aware of nothing in the text of the applicable statutes or rules indicating that "entangled" claims or claims that simply arise from the same set of operative facts as nonarbitrable claims escape otherwise-valid pre-dispute arbitration clauses, or that the financial or other burdens on the parties is relevant to the

determination whether to enforce an arbitration clause in this context.  Accordingly, the court declines to follow Stewart and Laubenstein and concludes that Wiggins' claim under section 31-51q must be submitted to arbitration.

      B.      Whether to dismiss SOX and Dodd-Frank claims

      The court has now determined that two of the three counts of Wiggins' Complaint need not be submitted to arbitration.  Accordingly, this court may address the substance of these claims.  However, this conclusion does not resolve the Motion to Stay in its entirety: having "conclude[d] that some, but not all, of the claims in the case are arbitrable, [a court] must then decide whether to stay the balance of the proceedings pending arbitration."  Oldroyd v. Elmira Savs. Bank, 134 F.3d 72, 76 (2d Cir. 1998).

      "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket."  Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987).  A stay is "particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  Id.

      In light of the "particular[ ] appropriate[ness]" of determining whether the claims that need not be arbitrated "are of questionable merit," the court exercises its discretion to evaluate ING's Motion to Dismiss as to the two claims that the court will not compel the parties to arbitrate.

      1.      Legal standard for motion to dismiss under Rule 12(b)(6)

      A court reviewing a motion to dismiss under Rule 12(b)(6) takes all well-pleaded "factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor."  Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014).  Dismissal of a

claim is appropriate if, despite this favorable reading, the complaint fails to allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  The requirement to allege "facts" means that "bald assertions" and "merely conclusory allegations" do not suffice.  Jackson v. Cnty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is "plausible on its face" if the facts that the plaintiff pleads "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  That is, the complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." Id. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

> 2.     The Dodd-Frank claim (Count II):  Wiggins' "whistleblower" status

The gravamen of Wiggins' Dodd-Frank claim is that Wiggins is a protected whistleblower under the statute and that ING retaliated against her for alerting certain individuals at ING to activities that she had witnessed during the course of her employment at ING.  The relevant substantive protection provided by Dodd-Frank is this:

> (h) Protection of whistleblowers
> > (1) Prohibition against retaliation
> > > (A) In general
> > > No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower--
> > > > (i) in providing information to the Commission in accordance with this section;

> (ii) in initiating, testifying in, or assisting in any investigation or judicial
> or administrative action of the Commission based upon or related to
> such information; or
> (iii) in making disclosures that are required or protected under the
> Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter,
> including section 78j-1(m) of this title, section 1513(e) of Title 18, and
> any other law, rule, or regulation subject to the jurisdiction of the
> Commission.

15 U.S.C. § 78u-6(h)(1)(A) (emphases added).

ING contends that Wiggins failed to allege that she is protected under Dodd-

Frank because she has not alleged that she is a "whistleblower" under the statute.

Specifically, ING points to an earlier portion of the same statutory section, which

provides:

> The term "whistleblower" means any individual who provides . . . information
> relating to a violation of the securities laws to the [Securities and Exchange]
> Commission, in a manner established, by rule or regulation, by the Commission.

15 U.S.C. § 78u-6(a)(6).  As Wiggins implicitly concedes, she did not "provide [any]

information . . . to the [SEC]."  See Opposition to Defendants' Motion to Dismiss ("MTD

Opp.") (Doc. No. 25) at 16 (stating simply that "Plaintiff is entitled to the protection of

subsection (iii) because . . . she engaged in protected activity under SOX," and not

asserting that Wiggins made any disclosure to the SEC).

Wiggins contends that the fact that the statute's "whistleblower" definition

requires more than simply making disclosures protected by SOX (i.e., reporting to the

SEC) is an "ambiguity." Id. at 17.  To resolve this ambiguity, she argues, the court

should look to regulations promulgated by the SEC.  She also asserts that "[t]he Dodd-

Frank whistleblower protection provisions were intended to enhance protections for

whistleblowers, and create new incentives that would encourage more employees to

report violations of securities laws," and that excluding individuals (such as her) who

17

have not provided information to the SEC defeats this statutory purpose.  See MTD

Opp. at 18.  She further complains that "an employee who report[s] violations of

securities laws internally to her employer . . . in order to resolve the issue before filing

an external complaint to a regulatory agency . . . would [have an] employer [who is]

incentivized to retaliate against [her] before she had a chance to report her complaint to

the S.E.C."  Id.

A number of district courts have addressed the legal question of who may state a

claim as a "whistleblower" under this statute.[8]  These district court authorities are split

on how to answer this question.  Compare Memorandum of Law in Support of

Defendants' Motion to Dismiss ("MTD Mem.") (Doc. No. 14-1) at 15 (collecting cases

concluding that those who do not make any report to the SEC are not "whistleblowers"

under Dodd-Frank) with MTD Opp. at 19 (collecting cases arriving at contrary

conclusion).

Having reviewed the relevant authorities, including all of those cited by the

parties, the court concludes that the better reading of this statute is that found in, inter

alia, Asadi v. G.E. Energy (USA), L.L.C., 720 F.3d 620 (5th Cir. 2013),[9] which requires

_____

[8] The court has also taken notice of the briefing in the recent case of Liu Meng-Lin v. Siemens AG, No. 13-4385-cv (2d Cir.), in which case the parties raised this issue, although the Court of Appeals expressly declined to decide it.  See Liu Meng-Lin v. Siemens AG, 763 F.3d 175, 183 (2d Cir. 2014) ("[W]e need not determine . . . whether Liu's internal reporting of alleged misconduct, with or without his subsequent disclosures to the SEC, qualified him as a "whistleblower" under the Dodd–Frank Act, . . . and we express no views on th[is] issue[ ].").  This briefing includes the Brief of the Securities and Exchange Commission, Amicus Curiae in Support of the Defendant ("SEC Amicus Brief") (Doc. No. 26-2), filed directly with this court as well.

[9] Asadi is the only decision in which a Court of Appeals has reached this issue, as far as the court is aware.  The parties raised this issue before the Second Circuit in Liu Meng-Lin v. Siemens AG, 763 F.3d 175 (2d Cir. 2014), but the court left the issue unresolved, see id. at 183.

the conclusion that Wiggins is (according to her own allegations) not a whistleblower under Dodd-Frank and is thus unable to state a claim under Dodd-Frank.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992).  Here, the court concludes from the clear language used in the statute that Congress did not intend to include someone in Wiggins' position within the protections extended under the Dodd-Frank Act.  Wiggins already has a whistleblower cause of action under SOX.  While some class of individuals who have causes of action as "whistleblowers" under Dodd-Frank already had causes of action under SOX, the statutory language indicates that Congress concluded that it is persons who report to the SEC who should receive the further protection of a separate cause of action under Dodd-Frank, in contrast to those who report what a person might reasonably believe to be a violation of securities laws to their supervisors, as Wiggins alleges she did.  Congress' considered judgment appears to have been that the former activity merited additional protections.

In its amicus brief, the SEC argues that Congress could not have meant to impose the additional requirement (i.e., reporting to the SEC) on Dodd-Frank plaintiffs like Wiggins (who base their retaliation claims on internal reporting rather than reporting to the SEC) because, in short, whether this element requires that the employer-defendant know of the reporting to the SEC, such a requirement "would be utterly ineffective as a preventive measure."  SEC Amicus Brife at 31.  The arguments raised in the SEC Amicus Brief do not persuade this court that the Fifth Circuit's conclusion—that

there is no statutory ambiguity and thus no avenue for <u>Chevron</u> deference to any "interpretation" of the statute—is flawed.

Assuming that the additional liability imposed under the Dodd-Frank cause of action is imposed only with some scienter requirement for the employer as to the employee's section 78u-6(a)(6) whistleblower (<u>i.e.</u>, to the SEC) status, <u>see</u> SEC Amicus Brief at 32, it may be that Congress wanted to make clear that an employee need not prove that she was retaliated against for her external whistleblowing rather than internal whistleblowing. And, at a more basic level, Congress may have deemed protecting internal whistleblowing (of the kind protected under SOX) done after external whistleblowing worth protecting with a cause of action over and above what had been available under SOX.

Nor does the court think it unreasonable that Congress might have seen fit to impose liability under the Dodd-Frank cause of action as a strict liability matter with respect to an employee's section 78u-6(a)(6) whistleblower status. <u>See</u> SEC Amicus Brief at 32 n.15. Whether or not imposing strict liability with respect to this one element of the cause of action somehow eliminates the value of this scheme over and above the SOX cause of action that had already existed, the court cannot say that Congress did not intend to impose liability in this manner irrespective of this consideration.

As already noted, <u>see</u> discussion <u>supra</u> citing MTD Opp. at 19, several district court cases have reached a contrary result on this issue. This court respectfully disagrees with these courts. The opinions arriving at contrary conclusions pay too little heed to the definition of "whistleblower" in section 78u-6(a)(6)—the stipulation that only certain actors may invoke the statute—and focus too much on the activities protected in

section 78u-6(h)(1)(A).  Because the latter provision invokes the defined term

"whistleblower," it is critical for courts to refer to, and apply, the limited definition of this

term.

For these reasons, as well as for the reasons laid out in more detail in the Fifth

Circuit's Asadi decision, the court concludes that Wiggins states no cause of action

under Dodd-Frank.

### 3.   The SOX claim (Count I)

A plaintiff suing under section 1514A(b)(1)(B) of title 18, as Wiggins does in

Count I, her SOX claim, must establish

> that (1) he or she engaged in a protected activity; (2) the employer knew that he
> or she engaged in the protected activity; (3) he or she suffered an unfavorable
> personnel action; and (4) the protected activity was a contributing factor in the
> unfavorable action.

Bechtel v. Admin. Review Bd., U.S. Dep't of Labor, 710 F.3d 443, 451 (2d Cir. 2013).

One protected activity under SOX is "provid[ing] information . . . regarding any conduct

which the employee reasonably believes constitutes a violation of [certain rules] to"

certain individuals or entities.  15 U.S.C. 1514A(a)(1).  To plead that she engaged in this

activity, a plaintiff must set forth facts from which it may reasonably be inferred "not only

[1] that [s]he [subjectively] believed that the conduct constituted a violation, but also [2]

that a reasonable person in h[er] position would have believed that the conduct

constituted a violation [of a relevant rule]."  Nielsen v. AECOM Tech. Corp., 762 F.3d

214, 221 (2d Cir. 2014) (internal quotation marks omitted).

ING argues that Wiggins' Complaint fails to state a claim under section

1514A(b)(1)(B) in three respects.  The court concludes that the one of ING's arguments

is meritorious and another is partially meritorious.  Because it will grant Wiggins leave to amend the Complaint, the court addresses all three arguments.

i.    Subjective belief that violation of law occurred

ING's first argument is that Wiggins fails sufficiently to allege that she had a subjective belief that a violation of a relevant law had occurred when she made the relevant reports to her superiors.  See MTD Mem. at 11; Reply Brief in Support of Defendants' Motion to Dismiss ("MTD Reply") (Doc. No. 30) at 5.

The court concludes that Wiggins has indeed failed to allege a subjective belief that a relevant law violation occurred.  Nowhere in the Complaint does the court discern any allegation that Wiggins actually believed that such a violation had occurred.  Nor does Wiggins point to any such allegation in her Opposition; she only brushes over her failure to make such allegations or mischaracterizes the "subjective belief" aspect of the SOX claim's "protected activity" element as a requirement that she simply believed in the truth of the allegations she made in the course of her reports to supervisors.  See, e.g., MTD Opp. at 12 ("There is no reason to conclude that Plaintiff did not subjectively believe the complaints that she was making . . . .").  This omission is not the kind of trivial one that can be overlooked on the basis of "reasonable inferences in the plaintiff's favor"; indeed, the plaintiff's subjective belief that the complained-of activity constituted prohibited activity is a key element of the cause of action and quite distinct from the question whether particular conduct constitutes a violation of the law.  See, e.g., Complaint ¶ 22, second sentence ("Defendant's action[ ] . . . is a violation of law . . .").  Nowhere has the plaintiff alleged that the various conduct she alleges to be violations of law were subjectively believed by her to be such violations.  (The statement of the

element of the cause of action in paragraph 42 is not sufficient because it is merely

conclusory, and makes no reference to any specific actions by ING, any specific

reporting by her, or any laws that she believed were violated.)

Accordingly, the Motion to Dismiss is granted on this basis, without prejudice to

Wiggins' repleading this claim, should she be able to do so consistent with Fed. R. Civ.

P. 11(b).  If she chooses to replead, Wiggins could add language to the effect that,

"when she reported [the relevant actions by others at ING] to her supervisors, Wiggins

believed that the actions she was reporting were violations of law because . . . ."

On this basis, the Motion to Dismiss is granted with respect to the SOX claim,

without prejudice to Wiggins' repleading this claim.

ii.     Objective reasonableness of belief that violations occurred

ING's second argument is that Wiggins fails to allege

that it was objectively reasonable for h[er] to believe that the activity [s]he
reported constituted a violation of [any of] the laws [or] regulations listed in
§ 1514A: the federal mail fraud, wire fraud, bank fraud, and securities
statutes, in addition to "any rule or regulation of the Securities and Exchange
Commission, or any provision of Federal law relating to fraud against
shareholders."

Nielsen, 762 F.3d at 222.  See MTD Mem. at 11–13; MTD Opp. at 4–16; MTD Reply at

5–8.  Specifically, ING argues that Wiggins fails to allege that she had a belief that

provisions of law were violated that was not "wholly untethered from the[ ] [relevant]

provisions," and that the violations were "material" rather than "trivial."  Nielsen, 762

F.3d at 222 & n.6.

The court rejects ING's argument that Wiggins' claim should be dismissed on this

basis because ING sweeps with too broad a brush, conclusorily casting Wiggins'

allegations as insufficient.  See United States v. Fuentes, No. 09-cr-143, 2012 WL

23

4754736, at *3 (W.D.N.Y. Apr. 25, 2012) (finding waived arguments that were largely conclusory). ING's Memorandum makes little to no attempt to demonstrate the lack of "tethering" between Wiggins' beliefs and the statutes allegedly violated. See MTD Mem. at 12. Meanwhile, Wiggins' Opposition engages in a lengthy analysis of how the complaints that she alleges she made meet Nielsen's elaboration of the "objective reasonableness" requirement. While the plaintiff, should she choose to amend the Complaint, is advised to take note of ING's points, the court declines to consider dismissing the SOX claim at this time on the basis of so undeveloped an argument.

There is one part of ING's Memorandum in which it asserts with more specificity how the Complaint is inadequate. ING points to Wiggins' allegation that "various inaccuracies she allegedly complained of violated the company's obligation to maintain accurate 'books and records.'" MTD Mem. at 12. Even this portion of the Complaint, ING argues, does not correlate to activity as to which Wiggins could have had an objectively reasonable belief that a material violation of a relevant law had occurred, because "not . . . every [ ] mistake [of the kinds alleged] amounts to a violation of 15 U.S.C. § 78m(b)." Id. That is, ING argues that Wiggins has not alleged that ING's behavior meets the scienter requirements of the statute that it purportedly violated. See id. (citing 15 U.S.C. § 78m(b)(5) (proscribing "knowingly circumvent[ing] or knowingly fail[ing] to implement [certain kinds of] s ystem[s] of internal accounting controls or knowingly falsify[ing] [certain kinds of] book[s], record[s], or account[s]")).

ING's showing here is inadequate to demonstrate that Wiggins does not allege any violations of laws that could have formed the basis of an objectively reasonable

belief that a material violation of a relevant law had occurred.  In fact, with respect to this activity, the Complaint alleges that Wiggins

> noticed that plans which had accounting issues or errors were frequently removed from the database used by auditors to identify plans to be audited during these quarterly SOX audits.  In extreme cases, the files of "problem" plans which were identified for audit went missing completely, only being located after the SOX audit was finished.

Complaint ¶ 16.  Reading this paragraph and drawing reasonable inferences in Wiggins' favor actually indicates just the opposite, i.e., knowing and intentional behavior possibly in violation of the very statutory provision cited by ING.

Although the Complaint may be faulty in places, and although Wiggins would serve the court and herself by pleading her case with specificity approaching that employed in her Opposition so as to put the defendant on more precise notice of the nature of her claims, ING has not shown that Wiggins fails to meet the Nielsen standard here.  Absent more specific indications of inadequacy and accompanying analysis by ING, the court rejects this argument for lack of a sufficient showing that dismissal is warranted.

### iii.    Limitations period

Finally, ING argues that the limitations period for SOX claims is 180 days prior to a claimant's OSHA complaint, that Wiggins filed her OSHA complaint on August 9, 2013, and that, accordingly, any cause of action based on an adverse action alleged to have occurred prior to February 8, 2013 is barred.  See MTD Mem. at 14–15.  While Wiggins alleges having been terminated within the 180 days preceding her OSHA complaint, many of her other allegations are about events occurring more than 180 days before Wiggins' filing of the OSHA complaint.  Wiggins does not directly respond to this

argument. [10]   The court thus concludes that she abandons any independent cause of action that she may originally have intended to raise based on events more than 180 days before her OSHA complaint.  See Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014).  To the extent that any of these events might be construed as a separate "retaliatory adverse employment [action] constitut[ing] a separate actionable 'unlawful employment practice,'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002), any such "separate [cause of] action[ ]" is dismissed.

     C.    Whether to stay the case pending arbitration

    Having determined that Wiggins must pursue Count III of the Complaint through arbitration and that dismissal of Counts I and II is appropriate, the court returns to the ultimate question "whether to stay the balance of the proceedings pending arbitration." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987); see also Part III.B supra.

    "Section 3 of the FAA directs a district court to enter a 'stay of proceedings' in a case where the asserted claims are 'referable to arbitration.'  See 9 U.S.C. § 3. However, . . . where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings."  Reynolds v. de Silva, No. 09 Civ. 9218, 2010 WL 743510, at *8–*9 (S.D.N.Y. Feb. 24, 2010) (quotation marks omitted from second sentence).  This court has, as the Reynolds court did, "dismissed [some of the plaintiff's claims], and all of [her] remaining claims must be

---

[10] Wiggins' two-sentence response to ING's argument on this front appears to confuse a motion to dismiss a complaint with a motion to strike allegations from a complaint.  ING does not ask to strike these allegations.  Accordingly, to the extent that such events may be "relevant to establish retaliatory motive" for her ultimate termination, as Wiggins argues, she need not presently be concerned that these allegations will "be dismissed [sic] from the Complaint."  MTD Opp. at 16.

referred to arbitration."  Id.  Because "[i]t would be an inefficient use of the Court's docket to stay the action," the court will "exercise[ ] its discretion to dismiss the action, without prejudice."  Id.

However, the court's dismissal of the Complaint is with leave to amend.  Should Wiggins exercise her right to amend, ING is, of course, free to file a renewed motion to stay these proceedings.  The court expects that, if this course of events plays out, ING will, having the benefit of knowing precisely which claims will and will not be arbitrated or resolved in court, explain in somewhat greater detail than it has in the Memorandum accompanying the present Motion to Stay why "resolution of those claims [as to which the court has compelled] arbitration . . . would . . . simplify the resolution of [any] claim[s still pending in this court,] if not resolve [them] altogether."  MTS Mem. at 19.

## IV.    CONCLUSION

The Motion to Stay is **GRANTED IN PART** insofar as the court compels arbitration of Count III and **DENIED IN PART** insofar as the court does not compel the arbitration of Counts I and II.  The Motion to Dismiss is **GRANTED** as to Counts I and II. Rather than staying the case pending arbitration of Count III, the case is dismissed. Wiggins is granted leave to file an Amended Complaint no later than 21 days from the entry of this Ruling.  The Clerk is directed to close the case after 21 days unless Wiggins files an Amended Complaint within the allotted time.

**SO ORDERED**.

Dated at New Haven, Connecticut this 17th day of June 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge