**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EVA WIGGINS, | : | CIVIL CASE NO. |
| Petitioner, | : | 3:14-CV-01089 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ING U.S., INC., et al | : | DECEMBER 15, 2015 |
| Defendant. | : | |

**RULING RE: MOTION FOR RECONSIDERATION (DOC. NO. 47); MOTION TO DISMISS (DOC. NO. 50); MOTION TO STAY (DOC. NO. 51); MOTION TO STAY (DOC. NO. 72)**

## I.    INTRODUCTION

Currently pending before the court are a number of motions, brought by both the plaintiff, Eva Wiggins ("Wiggins") and the defendants, ING U.S., INC. ("ING") and ING Life Insurance and Annuity Company ("ILIAC") (collectively, "ING").

Wiggins has filed a Motion for Reconsideration (Doc. No 47), asking the court to reconsider its Ruling (Doc. No. 42) ("Ruling"), in which the court dismissed Count II of the Complaint (Doc. No. 1) ("Compl."). Count II of the Complaint claimed that ING violated The Dodd-Frank Act, 15 U.S.C. § 78u-6(h). ING has filed a Motion to Dismiss (Doc. No. 50) the Amended Complaint (Doc. No. 43) ("Am. Compl."). The Amended Complaint contains only one count, consistent with the court's Ruling on the first Motion to Dismiss (Doc. No. 42), in which Wiggins claims that ING violated the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514a. In addition, ING has filed a Motion to Stay Pending Arbitration (Doc. No. 51), asking the court to stay the case pending arbitration of the SOX claim alleged in the Amended Complaint. Lastly, ING has filed a Motion to Stay (Doc. No. 72), asking the court not to proceed until the Court of Appeals for the Second

1

Circuit has decided ING's appeal of certain portions of the Ruling.  The court will address each of these Motions separately.

## II.    MOTION FOR RECONSIDERATION

"A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).  Wiggins argues that the Second Circuit's ruling in Berman v. Neo@Ogilvy LLC, 801 F.3d 145 (2d Cir. 2015), which was decided after the court issued its Ruling, constitutes an intervening change of controlling law and compels a different result than the one the court reached in its Ruling.  See Notice of Additional Authority in Support of Plaintiff's Partial Motion for Reconsideration at 1-2 (Doc. No. 57) ("Notice of Additional Authority").

In Berman, the Second Circuit held that the tension between two parts of Dodd-Frank, specifically, section 78u-6(a)(6) of title 15 of the United States Code and subdivision iii of section 78u-6(h)(1)(A) of title 15 of the United States Code, warranted granting Chevron deference to the Securities and Exchange Commission's ("SEC") interpretation of these sections.  See Berman, 801 F.3d at 155.  The SEC's interpretation of these sections, which is contained in SEC Rule 21F-2(b)(1), holds that an employee "is entitled to pursue Dodd-Frank remedies for alleged retaliation after [her] report of wrongdoing to [her] employer, despite not having reported to the Commission before [her] termination." Id.  This court reached the opposite conclusion

in its Ruling.  See Ruling at 16-21.  That conclusion is now untenable, in light of the
Second Circuit's holding in Berman.

Accordingly, the court grants the Motion for Reconsideration.  In light of Berman,
the court now holds that Wiggins is entitled to file a Second Amended Complaint, which
will include a Dodd-Frank claim, in addition to the SOX claim.

## III.  MOTION TO DISMISS

In its Ruling, the court also dismissed Wiggins's SOX claim, without prejudice,
because Wiggins "failed to allege a subjective belief that a relevant law violation
occurred."  Id. at 22.  Wiggins subsequently filed the Amended Complaint, in which she
reasserts her SOX whistleblower claim.  Pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure, ING has raised a number of arguments as to why the Amended
Complaint should be dismissed,

A.  Legal Standard

A court reviewing a motion to dismiss under Rule 12(b)(6) takes all well-pleaded
"factual allegations of the complaint to be true and draw[s] all reasonable inferences in
the plaintiff's favor."  Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014).  Dismissal of a
claim is appropriate if, despite this favorable reading, the complaint fails to allege
"enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  The requirement to allege "facts" means that "bald
assertions" and "merely conclusory allegations" do not suffice.  Jackson v. Cnty. Of
Rockland, 450 F. App'x 15, 19 (2d Cir. 2011); see also Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009).  A complaint is "plausible on its face" if the facts that the plaintiff pleads
"allow[ ] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678.  That is, the complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." Id.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Both parties generally agree that to state a whistleblower claim under SOX, a plaintiff must allege that: "(1) he or she engaged in a protected activity; (2) the employer knew that he or she engaged in the protected activity; (3) he or she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 219 (2d Cir. 2014); see also Memorandum of Law in Support of Defendants' Motion to Dismiss 7 (Doc. No. 50-1) ("Defs.' Mem. in Supp."); Opposition to Defendants' Renewed Motion to Dismiss 3-4 (Doc. No. 63) ("Pl.'s Opp.") (both citing to Nielsen).

B.  Allegations

The vast majority of the Amended Complaint is not new, but rather was already contained in the Complaint.  Accordingly, the court assumes that the parties are familiar with the underlying allegations.  To the degree that facts were added to the Amended Complaint, the court will highlight the relevant additional allegations in the sections that follow.

C.  Discussion

a.  Insufficient factual matter to meet the basic pleading requirements

ING argues that the Amended Complaint should be dismissed because it "does not meet the basic pleading requirements of the Federal Rules." Defs.' Mem. in Supp. at

4

7-8.  ING asserts that Wiggins's "allegations are conclusory and unadorned with the factual detail needed to plausibly make out a Sarbanes-Oxley whistleblower claim."  Id. More specifically, ING argues that Wiggins "never alleges who engaged in the alleged conduct about which she claims to have reported; when that conduct occurred; or to what plan or plans the conduct related. Nor does she so much as mention when she made the claimed reports of alleged misconduct or to whom she made these reports.  Id.  "Put simply, the Amended Complaint lacks 'any specific detail as to the who, where, when, or how . . . . ' "  Id. (quoting Ryone Mfg. Corp. v. HSB Stone Corp., No. 3:13-CV-318 (FJS/DEP), 2015 WL 1924266, at *3 (N.D.N.Y. Apr. 28, 2015).

ING's argument is unconvincing.  The general pleading standard articulated in Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard, a complaint "does not need detailed factual allegations," Twombly, 550 U.S. at 555, but rather need only plead "enough facts to state a claim for relief that is plausible on its face,"  id. at 570.  The requirement that a pleading contain "specific detail as to the who, where, when, or how" generally applies only under the heightened pleading standard for fraud claims, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  See Knoll v. Schectman, 275 Fed.Appx. 50, 51 (2d Cir. 2008) ("The predicate acts of mail and wire fraud alleged by the plaintiff do not meet Rule 9(b)'s heightened pleading standard, for we require that such allegations state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent") (internal quotation marks omitted); see also Greenwich Taxi, Inc. v. Uber Techs., Inc., Civil No. 14cv733 (AWT), 2015 WL 4774989,

at *8 (D. Conn. Aug. 13, 2015) (same).  Accordingly, the Amended Complaint is not

deficient – at least not for failing to comply with Rule 8(a)(2) – because it does not

articulate "the who, where, when, or how."

b.  <u>Failure to meet the heightened pleading standard of Rule 9(b)</u>

ING also argues that the Amended Complaint should be dismissed because

Wiggins's "Sarbanes-Oxley whistleblower claim fails to satisfy Rule 9(b)" of the Federal

Rules of Civil Procedure.  Defs.' Mem. in Supp. at 9.  ING's argument derives from the

fact that, in order to a state a SOX whistleblower claim, Wiggins must allege that she

"engaged in a protected activity," as such activity is defined in section 1514A of title 18

of the United States Code.  Section 1514A protects employees who, under certain

circumstances not relevant to this discussion, "provide information, cause information to

be provided, or otherwise assist in an investigation regarding any conduct which the

employee reasonably believes constitutes a violation of section 1341, 1343, 1344,

or 1348, any rule or regulation of the Securities and Exchange Commission, or any

provision of Federal law relating to fraud against shareholders."  18 U.S.C. §

1514A(a)(1).  ING argues that, "[b]ecause all the statutes and regulations referenced in

§ 1514A(a)(1) are ones setting forth fraud, Federal Rule 9(b) requires that the fraud

violation itself be plead with particularity."  <u>Id.</u> (internal citations, quotation marks, and

alterations omitted).

However, ING's argument overlooks the fact that section 1514A(a)(1) "protects

an employee who 'reasonably believes' that conduct violates an enumerated statute."

<u>Wallace v. Tesoro Corp.</u>, 796 F.3d 468, 480 (5th Cir. 2015).  As such, there is room for

a plaintiff to maintain a SOX whistleblower claim under Section 1514A, assuming he

6

has satisfied the other pleading requirements, "even if the [complained of] conduct turns out not to be fraudulent."  Id.; see also Guyden v. Aetna, Inc., 544 F.3d 376, 384 (2d Cir. 2008) ("a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under § 1514A").  Because section 1514A protects the employee who acted under a reasonable belief that fraud was occurring – rather than protecting only those employees who report activity that is, in fact, fraudulent – "Federal Rule of Civil Procedure 9(b) does not apply because [Wiggins] brings a retaliation claim based on his reasonable belief of fraud rather than a claim necessitating proof of fraud." Jin Huang v. Harman Intern. Industries Inc., Civil Action No. 3:14-cv-1263-VLB, 2015 WL 4601047, at *2 n. 3 (D. Conn. July 29, 2015); see also Wallace, 796 F.3d at 480 ("Although [the defendant] maintains that dismissal can be affirmed for failing to satisfy Rule 9(b), it is plain from the rule's text that it does not apply to this [SOX] retaliation suit").  Thus, ING's argument that the Amended Complaint must be dismissed because it does not meet the heightened pleading standard of Rule 9(b) is without merit, because SOX whistleblower claims do not need to be plead in accordance with this heightened standard.

c.  Failure to allege that subjective belief was objectively reasonable

Despite the fact that a SOX whistleblower complaint does not need to meet the heightened standard of Rule 9(b), it must still allege that the plaintiff, at the time she reported the perceived illegal behavior, "reasonably believe[d]" that the conduct she was reporting violated one of the laws enumerated in section 1514A.  See 18 U.S.C. § 1514A(a)(1).  In this context, a reasonable belief is one that is "objectively reasonable."

7

Nielsen, 762 F.3d at 222.  ING argues that the Amended Complaint fails to allege that

Wiggins's subjective belief was objectively reasonable.  See Defs.' Mem. in Supp. at 9.

Both the Administrative Review Board ("ARB") of the Department of Labor and

the Second Circuit (in Nielsen) have opined as to what a SOX whistleblower plaintiff

must allege in her complaint in order for the complaint to allege that the plaintiff

reasonably believed her employer violated one of the enumerated provisions identified

in section 1514A.  In Sylvester v. Parexel Int'l LLC, ARB No. 07-123, 2011 WL 2517148

(ARB May 25, 2011), the ARB stated that:

> because a complainant need not prove a violation of the
> substantive laws, we feel a complainant can have an objectively
> reasonable belief of a violation of the laws in Section 806, i.e.,
> engage in protected activity under Section 806, even if the
> complainant fails to allege, prove, or approximate specific elements
> of fraud, which would be required under a fraud claim against the
> defrauder directly. In other words, a complainant can engage in
> protected activity under Section 806 even if he or she fails to allege
> or prove materiality, scienter, reliance, economic loss, or loss
> causation.

Id. at *20.  In Nielsen, the Second Circuit afforded part of the ARB's decision in

Sylvester deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), which means

that the Second Circuit adopted the portion of the ARB's decision in Sylvester that it

deemed to be "persuasive."  See Nielsen, 762 F.3d at 221.  However, the Second

Circuit did not agree completely with Sylvester.  Specifically, the Second Circuit stated:

> We are less certain whether the ARB was correct in concluding that
> a § 1514A complaint need not even 'approximate specific elements'
> of the enumerated provisions allegedly violated, or that there is no
> requirement that the violation must be 'material.'  See Sylvester,
> 2011 WL 2165854, at *17–18.  We note that the statute does
> require plausible allegations that the whistleblower reported
> information based on a reasonable belief that the employer violated
> one of the enumerated provisions set out in the statute.  See 18
> U.S.C. § 1514A(a)(1).  Thus, the statutory language suggests that,

> to be reasonable, the purported whistleblower's belief cannot exist
> wholly untethered from these specific provisions.

Id. at 221 n. 6 (emphasis in the original).  The court interprets the quoted passage from

Sylvester as standing for the proposition that a SOX whistleblower plaintiff can state that

she had a reasonable belief that her employer violated one of section 1514A's

enumerated provisions, without specifically alleging that she believed that the

employer's conduct satisfied all of the elements of the federal statute / SEC rule that

was allegedly violated. [1]  On the other hand, the court interprets the quoted passage

from footnote 6 in Nielsen as standing for the proposition that, in order for a SOX

whistleblower plaintiff to allege that she reasonably believed that her employer was

violating one of the enumerated provisions, the plaintiff must allege that she believed, at

least approximately, that her employer's actions satisfied the elements of the

enumerated provision allegedly violated.[2]

---

[1] The Court of the Appeals for the Third Circuit has adopted the ARB approach.  In Wiest v. Lynch, 710 F.3d 121 (3d Cir. 2013), the Third Circuit noted that: "the purpose of whistleblower statutes like SOX § 806 is to protect people who stand against institutional pressures and say plainly, 'what you are doing here is wrong' in the particular way identified in the statute at issue.  By identifying conduct that falls within the ample bounds of the anti-fraud laws, an employee has done just that. That employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder's investment decision") (internal quotation marks, citations, and alterations omitted).  The Court of Appeals for the Sixth Circuit also adopted Sylvester wholesale in Rhinehimer v. U.S. Bancorp Investments, Inc., 787 F.3d 797, 809-811 (6th Cir. 2015).

[2] This seems to be in keeping with the view expressed by Judge Jordan in a dissenting opinion in Wiest, in which he wrote: "Notwithstanding the ARB's conclusion that . . . [the] heightened pleading requirements [of Rule 9(b)] should not be applied to SOX whistleblower claims, the same concerns that gave rise to those requirements suggest that communications that serve as the basis of a claim under § 806 should contain something more than vague allegations concerning a possible fraud.  I am not suggesting the importation of pleading standards to the review of a whistleblower's allegedly protected communications.  I am suggesting that it is not too much to ask for some specificity, especially since SOX whistleblower protection has the effect of shielding an employee from any disciplinary action and should not be lightly granted."  Wiest, 710 F.3d at 143 n. 10 (internal quotation marks and citations omitted).

ING argues that the Amended Complaint fails to "tether" Wiggins's "asserted belief to any violation of one of the enumerated provisions of Section 1514A," Defs.' Mem. in Supp. at 11, and, more generally, that it fails to allege that Wiggins believed, at least approximately, that ING's behavior satisfied the elements of the enumerated provisions allegedly violated, <u>see</u> Defs.' Mem. in Supp. at 9-12.  ING's argument is unconvincing.

The "specific provisions" identified in section 1514A are: "section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders."  18 U.S.C. § 1514A(a)(1).[3]  Before alleging how ING violated one of the "specific provisions," the Amended Complaint identifies a number of federal statutes and SEC rules related to ING's responsibility "to maintain accurate books and records, and establish adequate internal controls to ensure accurate reporting," namely: "15 U.S.C. § 78mb(2)(B); 17 C.F.R. § 240.13a-15; 15 U.S.C. § 7262 (SOX § 404); 15 U.S.C. § 7241 (SOX § 302); 15 U.S.C. § 78j-1(m)(4)(A)."  Am. Compl. ¶ 8.  The Amended Complaint also identifies a number of federal statutes and SEC rules related to ING's responsibility to "compl[y] with a code of ethics," namely: "15 U.S.C. § 7264; 17 C.F.R. § 228.406(b)(4) & (5) and 17 C.F.R. §

---

[3] It is clear that the "specific provisions" include not just the four forms of fraud that are identified by their United States Code section numbers, but also "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders."  <u>See</u> <u>Nielsen</u>, 762 F.3d at 222 ("We conclude that Nielsen has failed to allege that it was objectively reasonable for him to believe that the activity he reported constituted a violation of the laws and regulations listed in § 1514A: the federal mail fraud, wire fraud, bank fraud, and securities fraud statutes, in addition to "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders' ").

229.406(b)(4) & (5)); 15 U.S.C. § 80b-11; 17 C.F.R. § 275.204A-1." Id. ¶ 10.[4]  Then, the Amended Complaint identifies a number of sets of actions taken by ING employees and, for each set, states Wiggins's basis for believing that such action violated the statutes and rules the Amended Complaint identifies in paragraphs 8 and 10.

For example, the Amended Complaint alleges that Wiggins raised concerns about inaccuracies in ING's market value assessments ("MVAs"). Id. ¶ 15.  In the next paragraph, the Amended Complaint states that Wiggins "believed that ING's persistent determination of incorrect MVAs violated federal securities laws because she knew that federal securities laws required Defendants to maintain accurate books and records, establish adequate internal controls to ensure accurate reporting of financial information, and to act in the best interests of clients in accordance with fiduciary duty obligations." Id. ¶ 16.  The other allegations of misconduct follow a similar structural approach – first identifying the alleged action, then identifying why Wiggins thought such action violated a statute or rule covered by section 1514A. See, e.g., ¶¶ 18-19 (deferred sales charges); ¶¶ 21-22 (removal of files from SOX audits); ¶¶ 24-25 (disregard for internal controls); ¶¶ 27-31 (other violations of fiduciary duties).

---

[4] ING does not argue that these federal statutes and SEC rules fall outside the scope of "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders."  Rather, ING argues only that section 504 of the Financial Services Modernization Act, which is referenced in paragraph 29 of the Amended Complaint, "is not considered among the 'securities laws' and thus cannot serve as a basis for a Sarbanes-Oxley whistleblower claim." Defs.' Mem. in Supp. at 13.  However, the Amended Complaint also states that Wiggins believed that the behavior described in paragraphs 27-29 constituted a breach of the fiduciary duties ILIAC owed its shareholders which, the Amended Complaint alleges, would constitute a violation of the Investment Advisers Act of 1940. See Am. Compl. ¶¶ 9, 30. Although ING argues that a violation of the Financial Services Modernization Act cannot serve as the basis for a SOX whistleblower claim, see Defs.' Mem. in Supp. at 11, it does not argue that a violation of the Investment Adviser's Act of 1940 cannot serve as such a basis.

Although the Amended Complaint could be drafted with more specificity, it is not so vague or conclusory as to render it deficient for lack of "tethering."  None of the paragraphs, which identify why Wiggins believed the action described in the preceding paragraph was illegal, state exactly which federal statute or SEC rule such behavior violated.  However, given that the Amended Complaint already identifies all of the possible statutes and rules in paragraphs 8 and 10, it would be inaccurate to say that the Amended Complaint does not connect, or "tether," Wiggins's belief that ING's actions were illegal to the specific federal statutes and SEC rules that she believed ING was violating.  For example, although paragraph 16, discussed above, does not identify specific federal statutes or SEC rules, it states that, "federal securities laws required Defendants to maintain accurate books and records, [and] establish adequate internal controls to ensure accurate reporting of financial information."  Id. ¶ 16.  This is the exact same language used in paragraph 8, which does identify the relevant federal statutes and SEC rules that impose such obligations.  Id. ¶ 8.  It is a reasonable inference, then, that the "federal securities laws" referred to in paragraph 16 are those identified in paragraph 8.  As a result, the Amended Complaint sufficiently tethers the behavior that Wiggins believed was illegal to the federal statutes or SEC rules that she believed ING's conduct violated.

Further, to the degree that the federal statutes / SEC rules that Wiggins alleges ING violated contain materiality and scienter elements, the Amended Complaint contains assertions indicating that Wiggins believed that ING's behavior satisfied those elements.  For example, in alleging violations related to the MVAs, the Amended Complaint states that, "some of these [MVA] inaccuracies were incorrect by large dollar

12

amounts, such as hundreds of thousands of dollars." Am. Compl. ¶ 15. These allegations support the reasonable inference that a reasonable person in Wiggins's position would view such inaccuracies as material, rather than trivial. Similarly, the Amended Complaint alleges that "plans which had accounting issues or errors were frequently removed from the database used by auditors to identify plans to be audited during these quarterly SOX audits. In extreme cases, the files of 'problem' plans which were identified for audit went missing completely, only being located after the SOX audit was finished." Id. ¶ 21. Again, these allegations support the reasonable inference that a reasonable person in Wiggins's position could view such actions as material.

In addition to these allegations, the Amended Complaint also alleges other behavior that supports a reasonable inference that Wiggins believed ING was acting with the requisite scienter. For example, the Amended Complaint alleges that, "[o]n certain occasions, ING management directed another employee to make artificial and fraudulent accounting adjustments in Defendants' records to conceal the gains/losses that were caused by the incorrect MVAs." Id. ¶ 17. Similarly, the Amended Complaint asserts that, "[o]n certain occasions, ING management directed another employee to make artificial and fraudulent accounting adjustments in Defendants' records to conceal the gains/losses that were caused by the assessment of the incorrect deferred sales charges." Id. ¶ 20. And, as just mentioned, the Amended Complaint asserts that ING intentionally tried to hide certain "problem" plans from SOX auditors. Id. ¶ 21. Accordingly, these allegations support a reasonable inference that a reasonable person in Wiggins's position could view such actions as having been done with the scienter required by any of the federal statutes / SEC rules that Wiggins alleges ING violated.

Lastly, it is worth noting that whether a belief was "objectively reasonable" is judged according to "the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience."  Id. at 221 (internal quotation marks omitted).  The Amended Complaint alleges facts that permit the reasonable inference that a person in Wiggins's position could reasonably come to believe that ING was acting illegally.  Specifically, the Amended Complaint states that:

> During her employment with Defendants, Plaintiff was registered with the Financial Industry Regulatory Association ("FINRA"), and held NASD 6 and 63 licenses. Plaintiff had to complete education and training regarding federal securities laws in order to obtain those licenses, and she completed continuing education on issues relating to federal securities laws after obtaining those licenses. During the term of her employment with Defendants, Plaintiff understood that federal securities laws, including the Exchange Act and SOX, required Defendants to maintain accurate books and records, and establish adequate internal controls. During the term of her employment with Defendants, Plaintiff also understood that ILIAC was a registered investment adviser who was required to comply with the Investment Adviser's Act of 1940, including acting in accordance with its fiduciary duties to clients. Plaintiff also understood that Defendants were required to ensure compliance with a code of ethics.

Am. Compl. ¶ 12.  Given the Amended Complaint's assertion that Wiggins was trained to understand the federal securities laws, and that she knew that those laws required ING to maintain accurate books and records, establish adequate internal controls, and uphold the fiduciary duties it owed its clients, the Amended Complaint contains facts sufficient to allow the reasonable inference that it would have been reasonable for a person in Wiggins's position to believe that ING was violating these obligations.

Thus, the court concludes that the Amended Complaint adequately pleads that Wiggins possessed a subjective belief of wrongdoing, and that such subjective belief was objectively reasonable.  Accordingly, the Motion to Dismiss is denied.

14

## IV.    MOTIONS TO STAY

During a status conference, ING indicated that, in the event the court granted the Motion for Reconsideration, ING would prefer to terminate the currently pending Motions to Stay (Doc. Nos. 51 & 72) without prejudice.  ING stated that its arguments would differ depending on the number of counts in the operative complaint.  Thus, because the court is granting the Motion for Reconsideration and denying the Motion to Dismiss, the two pending Motions to Stay are denied without prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Motion for Reconsideration (Doc. No. 47) is **GRANTED.**  The plaintiff is instructed to file a Second Amended Complaint within 21 days of this Ruling, by January 5, 2016.  The Motion to Dismiss (Doc. No. 50) is **DENIED.**  The Motion to Stay (Doc. No. 51) is **DENIED** without prejudice.  The Motion to Stay (Doc. No. 72) is **DENIED** without prejudice.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 15th day of December 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge